IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NICOLAS CAROSIELLO,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN LaSHANN EPPINGER<br><br>Respondent. | CASE NO. 4:20-CV-02272<br><br>DISTRICT JUDGE BRIDGET MEEHAN BRENNAN<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**ORDER** |

Petitioner Nicolas Carosiello ("Petitioner") filed a federal habeas petition challenging the judgment of conviction entered in Columbiana County Court of Common Pleas for aggravated murder, three counts of tampering with evidence, three firearm specifications, and possession of marijuana. (ECF Doc. 1.) Before the Court is Petitioner's Motion for Appointment of Counsel (ECF Doc. 19), Motion for Leave to Conduct Discovery (ECF Doc. 20), and Motion for an Evidentiary Hearing (ECF Doc. 21). For the reasons set forth below, the motions are DENIED.

### I. Factual Background

The state court of appeals set forth the facts surrounding the crimes as follows:

¶ 2} Appellant is a known drug dealer who kept large amounts of marijuana and cash inside his residence, which is located in Wellsville. (12/29/15 Trial Tr., pp. 726, 892, 965.) On August 11, 2011, four people intended to break into his house to steal his drugs and money. *Id.* at pp. 733, 896, 967. This group of would-be thieves consisted of Holly Carosiello (the victim and Appellant's estranged wife), Jamie Adkins (Holly's brother), Jordan Gainer (Holly's cousin), and Johnny Paroda

(Holly's cousin). *Id.* at pp. 896–899, 767. However, when they arrived at Appellant's house, they saw people inside and left.

{¶ 3} The next morning, the group initiated a second attempt to break into Appellant's house. *Id.* at pp. 734. This time Holly was absent and the group was joined by Raymont Bryant, Tonya Sinkbeil and her niece. Jordan knocked on Appellant's back door and entered the house. *Id.* at p. 1214. On opening the door, he encountered Appellant's mother and a large aggressive dog. Jordan identified himself as a friend of Appellant and asked if he was home. When Appellant's mother angrily ordered him out of the house, he left.

{¶ 4} Appellant's mother called him to tell him that someone had entered their house looking for him. Appellant phoned several acquaintances in an attempt to identify this person. Around 4:00 p.m., Johnny called Appellant and told him that Jamie, Jordan, and Raymont had been to his house to steal his drugs and money, and that they would be back. He did not tell Appellant that he was involved.

{¶ 5} Appellant asked Johnny to find out when the thieves planned to return. *Id.* at p. 906. Meanwhile, Appellant called his brother, Tony Carosiello, and his friend, Brian Specht, and asked them to come to the house. *Id.* at p. 742. Brian brought his girlfriend. Appellant's girlfriend, Martina Michael, was also present. Appellant hid his money and moved his drugs deep into a barn on the property. He moved all the cars to a field behind the house. *Id.* at pp. 742, 1094, 1355. Appellant's goal was to create the appearance that the house was empty. Appellant and his friends then concealed themselves in the field behind the house and waited for the thieves to arrive. *Id.* at pp. 743, 864. Appellant, who was armed with a rifle and a handgun, maintained contact with Johnny. *Id.* at pp. 749, 864, 907–909, 1279–1280. Appellant's mother and stepfather waited inside the house. The stepfather was armed with a gun.

{¶ 6} Appellant instructed Johnny to tell Jamie that he would be out of the house for a few hours and that his mother and stepfather were out of town for a funeral. Johnny continually updated Appellant as to whether and when the thieves would arrive. At some point, Appellant believed that they were not coming, and his friends left. Appellant went inside to watch television with Martina, his mother, and his stepfather.

{¶ 7} Around 9:30 p.m., Johnny called Appellant and told him that the thieves were on their way to the house after all. Appellant told Martina to call Tony and instruct him to stay away from the house, because he knew the thieves would not return if they saw Tony. *Id.* at p. 752. Tony told Appellant that a red Sunfire he believed to be Holly's, and carrying a group of people, passed his car. *Id.* at pp. 753, 1035–1036, 1098. Appellant also texted Brian and told him not to come to the house. Brian texted in reply: "[k]ill those m* * * f* * *ers." *Id.* at p. 871.

{¶ 8} Holly drove past Appellant's house and the thieves determined that the house appeared empty. This group now included Holly, her boyfriend Josh Rudder, Jamie, and Dustin Green. Jamie texted Johnny to ensure that no one was home and Johnny swore that the house was empty. *Id.* at p. 978. Josh stayed in the car and drove off, leaving Holly, Jamie, and Dustin at the house. Dustin stayed on one side of the house as a lookout. Jamie knocked on the back door. When no one answered, Jamie unsuccessfully tried to kick down the door. *Id.* at p. 980. When his efforts failed, he and Holly decided to lift her to Appellant's window, which was above the back door, so that she could climb inside the house. Jamie attempted to push in an air conditioner unit that was sitting in the window. *Id.* at p. 983. At first, he was met with resistance. Then, suddenly, the unit slid smoothly inside the house. While this was occurring, Appellant was waiting in his room, armed with a .22 caliber pistol. *Id.* at p. 1294.

{¶ 9} Once the air conditioner was out of the way, Jamie lifted Holly to the window. *Id.* at p. 984. She had managed to climb partially inside when Appellant fired his gun. The shot hit Holly between her eyes. Jamie saw a flash as Holly fell out of the window and landed on a cement staircase that led to the basement. Appellant then leaned out of his window, firing his gun several times and yelling, "[y]ou robbed the wrong house." *Id.* Jamie tried to get to Holly, but when he saw the back door open, he and Dustin fled as Appellant fired into the backyard. Shortly thereafter, Martina went outside and heard Appellant say, "[o]h, my God, I shot Holly." *Id.* at p. 756.

{¶ 10} Martina called Tony and told him, "I think [Appellant] just shot Holly." *Id.* at p. 1100. Shortly thereafter, Tony arrived with his girlfriend Roxanne Lucas and a friend, Michael Johnston. When they arrived, Martina was crying and said, "Holly is dead." *Id.* at p. 1064. Roxanne, who is a nurse, checked Holly and told Appellant to call 911, because she thought she felt a faint pulse. *Id.* at p. 1066. Appellant told his family, "[y]ou can't tell them I shot her. Don't tell them I shot her." *Id.* at p. 761. He also tried to convince his mother and Martina to tell the police that they shot Holly. Appellant was apparently prohibited from being in possession of a gun due to a previous criminal conviction. Shortly thereafter, Tony left, and Appellant and his stepfather began hiding the drugs and putting their guns away. At some point, Appellant's stepfather did call 911.

{¶ 11} The first responder to arrive was Officer Scott Angelo of the Ohio Department of Natural Resources. *Id.* at p. 453. He heard the call on his radio and offered to assist at the scene. He testified that Appellant and his stepfather were outside and Appellant's mother and Martina were inside the house when he arrived. He asked Martina and Appellant's mother to exit the house, since he was under the impression that an intruder may have been inside. Deputy Kevin Shulas was the next to arrive at the scene. Both Officer Angelo and Dep. Shulas testified that Appellant seemed calm and collected and that no one in the family told them that there had been a shooting. *Id.* at pp. 488, 539.

{¶ 12} Appellant initially told investigators that he had heard no gunshots during the encounter. Ultimately, he made four statements to investigators which he later admitted were untruthful. In these statements, he claimed that he saw a man in the house and he assumed that man killed Holly. However, several witnesses came forward and implicated Appellant in the shooting. One of these witnesses was his girlfriend. Sometime later, Appellant's attorney convinced him to give a truthful statement. While he admitted to Det. Allan Young that he shot Holly, he claimed to have wildly fired his shot at a "shadow."

{¶ 13} Appellant was charged with one count of aggravated murder, an unspecified felony in violation of R.C. 2903.01(A), three counts of tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1), one count of possession of drugs in violation of R.C. 2925.11(A), and three attendant firearm specifications.

{¶ 14} At trial, the state theorized that Appellant lured the would-be thieves to enter the house on the premise that it was empty, with the intent to ambush them once inside. In response, Appellant claimed that he acted in self-defense in accordance with the "castle doctrine." The jury found Appellant guilty on all counts. However, the jury found that the state had not offered adequate proof as to the amount of drugs in Appellant's possession, and his conviction for possession of drugs was reduced to a minor misdemeanor.

*State v. Carosiello*, 2017-Ohio-8160, 2017 WL 4548327, at *1-3 (Ohio App. Ct. Oct. 5, 2017).

Petitioner asserts the following four grounds for relief in his pending federal habeas petition:

GROUND ONE: Nicolas Carosiello's conviction for aggravated murder was not supported by sufficient evidence, in violation of my right to Due Process of law under the Fifth and Fourteenth Amendments to the United States.

GROUND TWO: I was deprived of my right to effective assistance of trial counsel as provided by the Sixth Amendment to the United States Constitution.

GROUND THREE: Nicolas Carosiello's conviction for aggravated murder is in violation of my right to Due Process, under the Fifth and Fourteenth Amendments and right to a jury trial verdict of "beyond a reasonable doubt," in violation of the Sixth Amendment of the United States Constitution.

GROUND FOUR: Petitioner's conviction for aggravated murder is in violation of my substantive right of self-defense, under the Second Amendment, the "Privileges and Immunities" clause of the Fourteenth Amendment, my right against state abridgment, under the Fourteenth Amendment, and my right to the procedural application of this substantive right, under the Due Process clause of the Fourteenth

4

Amendment, and right to a fair trial and jury verdict of "beyond a reasonable doubt," under the Sixth Amendment.

(ECF Doc. 1 pp. 5-6, 8-9.)

Respondent filed his Return of Writ on April 7, 2021. (ECF Doc. 7.) On August 31, 2021, Petitioner's motion for production of state court records was granted in part and denied in part. (ECF Doc. 13.) Respondent thereafter produced state court records pursuant to the Court's August 31, 2021 Order. (ECF Doc. 15.) Petitioner requested and received extensions of time to file his Traverse. (ECF Docs. 8, 9, & 16.) He ultimately filed his Traverse on January 3, 2022. (ECF Doc. 17.) Over a month later, on February 14, 2022, he filed a motion for appointment of counsel, a motion for leave to conduct discovery, and a motion for an evidentiary hearing. (ECF Docs. 19-21.)[1] Respondent filed opposition briefs (ECF Docs. 23 & 24) and Petitioner filed replies (ECF Docs. 26 & 27.) The Court addresses each of Petitioner's motions below.

## II.  Motions

### A.  Petitioner's Motion for Discovery

Petitioner's motion for leave to conduct discovery relates to Ground Two, alleged ineffective assistance of counsel. (ECF Doc. 20 p. 1.) He requests leave to depose seven witnesses who never appeared at trial, and he requests discovery of incident reports from the East Liverpool Police Department and the Columbiana County Sheriff's Office. (ECF Doc. 20 p. 1.) The seven individuals he seeks to depose are: (1) Patty Lewis, (2) Brian Specht, (3) Trial Attorney, Jennifer Gorby, (4) Trial Attorney Colleen Hall Daily, (5) Private Investigator, Joe Rice, (6) Private Investigator, Rodger Lanaghan, and (7) Jim Watson. (*Id.*) He states he

---

[1] The Court notes that Petitioner refers to various attachments in his Traverse (ECF Doc. 17-1 pp. 148-49) in the pages cited by him in his motion for discovery (ECF Doc. 20 p. 3) and motion for appointment of counsel (ECF Doc. 19 p. 2). Petitioner did not append the referenced attachments to his Traverse. On February 16, 2022, the Court alerted Petitioner to the lack of attachments and granted him leave until March 4, 2022 to file the attachments. (ECF Doc. 22.) However, Petitioner has not filed any attachments.

5

"previously explained how the requested evidence is material to Ground Two, so I will just refer the Court back to that argument in Petitioner's Reply/Traverse." (*Id*. at p. 3 (citing pp. 130-41 of Reply/Traverse); *see also* ECF Doc. 26 p. 1 (citing PReply/Traverse ECF Doc. 17-1, PageID# 2889-2900)).) Respondent opposes Petitioner's requests for discovery, asserting it lacks a fact-specific showing of good cause and amounts to a "fishing expedition." (ECF Doc. 23.)

The Court notes that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). "[F]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient efforts to pursue in state proceedings." *Id.* at 186. Further, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 1796–97, 138 L. Ed. 2d 97 (1997). Instead, pursuant to Habeas Rule 6, discovery under the Federal Civil Rules is discretionary with the Court and may be allowed only upon a showing of "good cause." *See id.*; *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6.") (citing *Bracy*, 520 U.S. 899).

"Rule 6 does not sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (internal quotations and citations omitted). Good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Id*. "The burden of demonstrating the materiality of information requested is on the moving party." *Stanford*, 266 F.3d at 460. Expansion of the record is not absolute either. It is discretionary under the Rules Governing Habeas Corpus Cases Under

6

Section 2254. *See* Rules Governing Habeas Corpus Cases Under Section 2254, Rule 7 ("The judge <u>may</u> direct the parties to expand the record . . .") (emphasis added).

In Ground Two, Petitioner raises the following five alleged instances of ineffective assistance of trial counsel in Ground Two: (1) failure to call witnesses Patty Lewis, Brian Specht, private investigator Joe Rice, and Jim Watson to testify; (2) failure to interview defense witnesses Brain Specht, Patty Lewis, Jim Watson, and private investigator Joe Rice; (3) failure to utilize investigator Rodger Lanaghan, who was hired with court approved funds; (4) failure to collect police reports to establish the victim and her co-conspirators patterns of stalking and harassing Petitioner; and (5) failure to investigate the crime scene and familiarize themselves with the layout of the house and property. (ECF Doc. 1 p. 6.)

Petitioner argues that he presented these claims of ineffective assistance of counsel in state court, but the state court did not adjudicate his claims on the merits and instead "erroneously denied [those claims] under the doctrine of res judicata." (ECF Doc. 20 p. 3.) On this basis, he argues that this Court should consider his claims of ineffective assistance of counsel *de novo* and without *Pinholster*'s limitations. (*Id*.) Respondent responds that the Petitioner's motion is "devoid of any fact-specific basis to grant it." (ECF Doc. 23 p. 2.) Respondent also asserts that "the elaborate argument regarding ineffective assistance of counsel that Carosiello is now making in this forum was never made in the Ohio Court of Appeals" and "[t]he Ohio Court of Appeals adjudicated the record it had before it that was 'pure speculation.'" (*Id*.) In his Reply brief, Petitioner argues that his request is not a fishing expedition or devoid of a fact-specific basis to grant it because he explained in his Reply/Traverse "exactly what [he] expect[s] the witnesses to testify to and how the testimony is material to Ground Two of the Petition" (ECF Doc. 26 p. 1.)

7

The Court first turns to whether the state court adjudicated the five claims of ineffective assistance of counsel contained in Ground Two on the merits. That inquiry necessitates a look into the meaning of "on the merits." As one district court observed when addressing a petitioner's request for discovery, the Supreme Court clarified the meaning of "on the merits" in *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). *See Lang v. Bobby*, No. 5:12 CV 2923, 2014 WL 5393574, at *2 (N.D. Ohio Oct. 23, 2014). The *Richter* Court explained that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* (quoting *Richter*, 131 S. Ct. at 784–85). There is no requirement under § 2254 that a decision by a state court must include a statement of reasons in order to constitute an adjudication on the merits. *Richter*, 562 U.S. at 98. Even when a state court fails to give reasons for its decision, a state court decision "can be deemed to have been 'adjudicated on the merits.'" *Id.* at 100. And the presumption that a state court decision was adjudicated on the merits can only be overcome "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100.

In Petitioner's underlying state court proceedings, he filed two petitions to vacate or set aside judgment of conviction or sentence, asserting ineffective assistance of trial counsel. (ECF Doc. 7-1 pp. 192-94, 232-37.) The first petition was filed on January 23, 2017 (ECF Doc. 7-1 pp. 192-94) and the trial court found that it lacked jurisdiction to determine the petition because Petitioner's direct appeal was pending (*id*. at 195). On April 12, 2018, Petitioner filed the second petition after his direct appeal concluded. (*Id*. at pp. 232-37.) He alleged ineffective assistance of trial counsel, asserting that his trial counsel:

8

> <u>failed to call witnesses</u>; <u>failed to interview State and defense witnesses prior to trial</u>; <u>failed to utilize the private investigator they had hired with Court funds</u>; failed to hire a balistics expert; did not request an immunity hearing pursuant to the Castle doctrine; <u>did not collect police reports to establish the victim's pattern of stalking me</u>; <u>did not investigate the crime scene to familiarize themselves with the layout of the house</u>; did not hire an expert witness to determine plausibility of the A/C unit having being pushed into the room and fallen; did not file for change of venue; did not file motion to have allowed the police interview and Grand Jury testimony provided by Rich Lewis, who was an eyewitness at the scene of the crime, but passed away before the commencement of trial.

(*Id*. at pp. 233-34 (emphasis added).) In support of his petition, he attached only his own affidavit, restating that he felt his trial counsel was ineffective for the reasons listed in the petition. (*Id*. at pp. 234, 236-37.) He asserted that he did not attach evidence supporting his claim for relief because he "need[ed] the assistance of an attorney and investigator to produce the evidence." (*Id*. at p. 234 (referencing a motion for expert assistance and appointment of counsel filed with his petition).)

On May 22, 2018, the trial court denied Petitioner's petition to vacate or set aside the judgment of conviction or sentence, finding it "barred by res judicata" and denying it summarily without a hearing. (ECF Doc. 7-1 p. 239.) Petitioner filed an appeal with the state court of appeals. (ECF Doc 7-1 pp. 241-44.) The court of appeals affirmed the denial of the petition. (*Id*. at pp. 267-78.) The court of appeals found the "major deficiency" with his petition was "it provide[d] no support for the claims asserted and provide[d] no evidence; the allegations appear to be merely a desire for further discovery." (*Id*. at p. 274.) The court explained more specifically:

> For instance, Appellant asserts trial counsel was ineffective for failing to call witnesses, specifically in the affidavit attached to his 2018 petition he asserts his mother and Brian Specht should have been called. While failure to call a witness is a proper issue for postconviction relief petition, Appellant does not explain what their testimony would be and how it would have impacted the result of the trial. A postconviction petition should not be used for a mere desire for further discovery. Similarly, his claims for failure to interview witnesses, utilize a private investigator,

9

> hire a ballistics expert, obtain police reports on the victim stalking Appellant, and investigate the crime scene may be proper issues for a postconviction petition. However, Appellant does not expound on these claims to indicate how they would have impacted his trial. For example, Appellant admitted to shooting at the window where the victim was coming through it. It is unclear what testimony or opinion an expert witness on ballistics would have that would alter the fact that Appellant shot at the victim. Or, how that opinion would alter the evidence that Appellant enticed the would-be thieves to his house under the belief that it was not occupied.

(*Id*.) The court of appeals additionally found that Petitioner's claims of ineffective assistance of counsel for failing to request an immunity hearing, failing to argue change of venue, and failing to request grand jury transcripts were speculative and also barred by res judicata because those claims were evident from the record and could be raised in a direct appeal without reliance on matters outside the record. (*Id*. at pp. 274-76.) Following the court of appeals' denial of his petition, Petitioner sought review in the Supreme Court of Ohio. (*Id*. at pp. 279-305.) On October 15, 2019, the Supreme Court of Ohio declined jurisdiction. (*Id*. at p. 306).

As explained in *Richter*, the presumption that a state court decision was adjudicated on the merits can be overcome "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. In Petitioner's case, the state court of appeals did not deny all claims based on res judicata. The claims that the court of appeals found barred by res judicata – failing to request an immunity hearing, failing to argue change of venue, and failing to request grands jury transcripts (ECF Doc. 7-1 pp. 275-76) – are not the claims upon which Petitioner seeks federal habeas relief. In contrast, the court of appeals found the claims upon which Petitioner seeks federal habeas relief wholly unsupported because he failed to make any showing of how the evidence that he claimed his trial counsel failed to develop would have impacted his trial. (ECF Doc. 7-1 p. 274.) Thus, while the court of appeals affirmed the trial court's denial of the petition, it did not do so solely on the basis of res judicata. Petitioner

10

acknowledged this in the memorandum in support of jurisdiction which he filed with the Supreme Court of Ohio, stating:

> To the credit of the Seventh District, unlike the trial court it reviewed each claim independently – including whether any of the claims were subject to res judicata. To that end, the appellate court found that only the fifth, ninth and tenth claims should have been raised in Appellant's direct appeal and are therefore barred by res judicata.

(ECF Doc. 7-1 p. 288.)  Considering the foregoing, the Court finds for the purpose of the present motions that the state court of appeals adjudicated all claims on the merits, with the exception of those claims specifically identified as barred by res judicata.  Accordingly, Petitioner's request for discovery is not warranted.  *Pinholster*, 563 U.S. at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.")

Petitioner also contends that his request for discovery should be granted because he was denied an opportunity to develop the factual record in state court despite his attempts to do so. (ECF Doc. 20 p. 3.)  However, similar arguments have been rejected by federal courts.  For example, a petitioner's argument that "*Pinholster* should not preclude discovery when . . . the state courts refuse to allow any or adequate factual development" was rejected in *Davis v. Bobby*, No. 2:10-CV-107, 2017 WL 2544083, at *5 (S.D. Ohio June 13, 2017).  In rejecting the argument, the court explained:

> [T]he Sixth Circuit has rejected any suggestion that *Pinholster* applies only to cases in which the state courts permitted factual development during collateral review. *See Donaldson v. Booker*, 505 Fed.Appx. 488, 493 (6th Cir. 2012) (rejecting argument that *Pinholster* does not apply to cases where the petitioner requested an evidentiary hearing and was not at fault for the failure to develop the record in state court); *Fears v. Bagley*, 462 Fed.Appx. 565, 573–74 (6th Cir. 2012) (same); *see also Waddy v. Robinson*, Case No. 3:98-cv-084, 2014 WL 4674291, at *4 (S.D. Ohio Sep. 18, 2014) (nothing in *Pinholster* "suggests that a habeas petitioner who has been denied discovery in the state courts is empowered to use federal habeas discovery to correct that denial."); *Turner v. Hudson*, No. 2:07-cv-595, 2012 WL 511442, at *3 (S.D. Ohio Feb. 15, 2012) ("The Supreme Court [in *Pinholster*] did not recognize an exception for cases where the petitioner had been diligent in state

court.").

*Davis*, 2017 WL 2544083, at *5.  The Court finds this analysis persuasive, and accordingly finds Petitioner's claim that *Pinholster* is not a barrier to discovery because the state court denied him an opportunity to develop the factual record (ECF Doc. 20 p. 3) to be unavailing.

The Court also observes that "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Alvarado v. Warden, Ohio State Penitentiary*, No. 3:16-CV-2563, 2018 WL 4467204, at *12 (N.D. Ohio Sept. 18, 2018) (citing *Pinholster*, 131 S.Ct. at 1401), *aff'd,* No. 3:16 CV 2563, 2018 WL 5783676 (N.D. Ohio Nov. 5, 2018).  While Petitioner claimed in state court that he could not produce evidence without the assistance of an attorney or investigator (ECF Doc. 7-1 p. 234), the record does not suggest that he needed such assistance to inform the state court of what testimony he anticipated from witnesses such as his own mother and Joe Rice, the investigator he communicated with personally (ECF Doc. 17-1 p. 137-39).  And considering the detailed allegations Petitioner has now presented in support of his federal habeas petition, which articulate how the evidence he claims his trial counsel failed to develop would have changed the outcome of his trial (ECF Doc. 17-1 pp. 137-48), the Court sees no reasonable explanation for his failure to provide similarly detailed allegations the state court.

For the reasons set forth above, the Court DENIES Petitioner's motion for discovery.

**B.      Petitioner's Motion for Evidentiary Hearing**

Petitioner's motion for evidentiary hearing relates to Grounds Two, Three, and Four. (ECF Doc. 20 & 27.)  He asserts that an evidentiary hearing is warranted because the three grounds were not adjudicated on the merits in state court and because he diligently attempted to develop the factual record in state court.  (*Id*.)  Respondent argues that an evidentiary hearing is

12

not warranted because Ground Two was presented to and decided by the state court, and because Petitioner did not diligently attempt to develop the factual record in state court. (ECF Doc. 24 pp. 2-7.) Respondent also argues that an evidentiary hearing is not warranted with respect to Grounds Three and Four because the state court considered and analyzed Petitioner's Castle Doctrine argument, and because Grounds Three and Four are non-cognizable claims for federal habeas review. (*Id*. at pp. 3-4, 7-9.)

Evidentiary hearings are not precluded in federal habeas proceedings. As set forth in 28 U.S.C. § 2254(e)(2):

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2); *see also* Rule 8 of the Rules Governing Habeas Corpus Cases Under Section 2254 (addressing evidentiary hearings). However, "the fact that [a petitioner] is not disqualified from receiving an evidentiary hearing under § 2254(e)(2) does not entitle him to one." *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003).

"The Supreme Court has held that 'failed' within the meaning of § 2254(e)(2) refers to 'a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.'" *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (citing *Williams v. Taylor*, 529 U.S. 420,

13

432, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000)). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams* 529 U.S. at 437. However, "[e]ven in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing.'" *Bowling*, 344 F.3d at 512 (quoting *Stanford v. Parker,* 266 F.3d 442, 460 (6th Cir. 2001)). Moreover, even if a petitioner is found to be diligent, "the decision to grant an evidentiary hearing is left to the district court's sound discretion." *Robinson v. Howes*, 663 F.3d 819, 824 (6th Cir. 2011) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1993, 167 L. Ed. 2d 836 (2007).)

For the reasons explained in Section II.A. *supra*, the Court finds that an evidentiary hearing is not warranted with respect to Ground Two. Although Petitioner sought a hearing in state court and asked for counsel and expert assistance (ECF Doc. 7-1 p. 234), the state court of appeals explained that it was the petitioner's "initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." (*Id*. at p. 277 (internal citation omitted).) The court of appeals concluded that the trial court's denial of the request was proper because his petition for post-conviction relief contained "only allegations and [did] not expand on [those] allegations in any manner that could provide a basis for granting the petition." (*Id*. at p. 277.) Thus, it was Petitioner's lack of diligence in supporting his petition that resulted in denial of his request to develop the record in state court. For instance, no attempt was made to provide the state court with detailed summaries of what the evidence would allegedly demonstrate if discovery or an evidentiary hearing was allowed, in contrast to Petitioner's filings in this federal habeas action. (*Id*. at pp. 137-48.) Further, as noted above, Petitioner did not develop evidentiary

14

support for what testimony would have been offered by his mother to bolster his self-defense claim, or by the investigator he had talked to directly. (ECF Doc. 17-1 p. 139.)

The Court accordingly finds that Petitioner failed to develop the factual basis of his claim in state court, and also failed to demonstrate that he was unable to develop the record without the assistance of an attorney or investigator. Having considered Petitioner's request, the Court further finds that he has not met his burden to demonstrate an entitlement to an evidentiary hearing as to Ground Two.

With respect to Grounds Three and Four, the parties disagree as to whether the claims were adjudicated on the merits. Petitioner states the claims in Ground Three and Four are procedurally defaulted because he never presented them to the state court, and there is no avenue for him to now raise them in state court. (ECF Doc. 21 p. 3, ECF Doc. 27 p. 5.) He argues that an evidentiary hearing is warranted "on the issue of 'cause & prejudice' . . . and to develop a factual record for [the] two claims." (ECF Doc. 21 p. 3.) Respondent argues in response that the claims were adjudicated on the merits as part of Petitioner's direct appeal arguments regarding the "Castle Doctrine" and/or are not cognizable on federal habeas review. (ECF Doc. 24 pp. 3-4, 7-9.) Thus, Respondent contends the request for evidentiary hearing should be denied. (*Id*.)

The Court defers reaching a determination as to whether Grounds Three and Four are procedurally defaulted and/or whether they are cognizable federal habeas claims until a full review of the petition is completed. Even assuming *arguendo* that the claims were not adjudicated on the merits, Petitioner does not clearly identify what facts he seeks to develop in support of these two grounds for relief. For these reasons, the Court finds that an evidentiary hearing is not warranted as to Grounds Three and Four.

Based on the foregoing, the Court DENIES Petitioner's motion for evidentiary hearing.

### C. Petitioner's Motion for Appointment of Counsel

Petitioner seeks appointment of counsel "for the purpose of conducting discovery and to represent [him] at the evidentiary hearing, if it is granted." (ECF Doc. 19.)

The Rules Governing § 2254 Cases only require appointment of counsel if an evidentiary hearing is warranted or if necessary for effective discovery. *See* Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, Rules 6 & 8. Otherwise, appointment of counsel for federal habeas petitioners filing petitions pursuant to § 2254 is governed by 18 U.S.C. § 3006A and is discretionary. *See* 28 U.S.C. § 2254(h). As provided therein, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation <u>may</u> be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2)(B) (emphasis added); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) ("The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require.").

Petitioner's request for counsel is premised on the Court granting his motion for leave to conduct discovery and/or an evidentiary hearing. Since the Court denies these motions, the Court also DENIES his motion for appointment of counsel.

### III. Conclusion

For the reasons explained above, the Court DENIES Petitioner's Motion for Appointment of Counsel, Motion for Leave to Conduct Discovery, and Motion for an Evidentiary Hearing. (ECF Docs. 19-21.) The findings in this order are subject to reconsideration or renewal should the Court's full habeas corpus review reveal a basis to grant the requested relief.

Dated: September 29, 2022
　　　　　　　　　　　　　　　　　　　　/s/ *Amanda M. Knapp*
　　　　　　　　　　　　　　　　　　　　AMANDA M. KNAPP
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE